**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| YEIMY SAMBRANO, Individually and on Behalf of All Others Similarly Situated, | Case No.    CV423-188 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| CITI TRENDS, INC., | |
| Defendant. | |

<u>CLASS ACTION COMPLAINT</u>

Plaintiff Yeimy Sambrano ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Citi Trends, Inc. ("Defendant" or "Citi"). Plaintiff seeks to obtain damages, restitution, and injunctive relief for a class of individuals (the "Class") who are similarly situated and have received notices of the data breach from Citi or from its predecessors, successors, subsidiaries, or associates. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigationof her counsel, and the facts that are a matter of public record.

<u>NATURE OF THE ACTION</u>

1.     Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII")[1] of Defendant's current and former employees and prospective employees, including, but not limited to, first and last name, Social

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal oridentifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

Security number, date of birth, bank and other financial account numbers, routing number, and other information.

2.      Citi is a company that manages and/or operates a network of over 600 stores in 33 states. Prior to June of 2023, Citi was subject to malicious online database cyberattacks.[2] The attack resulted in a breach of documents and information.[3]

3.      Prior to and through January 14, 2023, Defendant stored the PII of Plaintiff and Class Members, unencrypted, in an internet-accessible environment on Defendant's network. This includes individuals who are applicants who sought employment from a store owned, operated, or franchised through Citi, as well as individuals who are current or former employees of Citi itself. The Plaintiff and Class includes (but may not be limited to) individuals who provided their extremely sensitive, personal, and private information to be considered for employment opportunities.

4.      On or before January 14, 2023, Defendant learned of a data breach on its network that occurred on or around January 14, 2023 (the "Data Breach"). During the Data Breach, an unknown individual accessed files containing PII of Plaintiff and the Class Members.[4]

5.      On or around February 23, 2023, Defendant filed a Form 8-K with the Securities and Exchange Commission stating that the Data Breach was the result of a "hive ransomware" attack.[5]

6.      Citi was required to begin notifying victims of its Data Breach as soon as possible, informing them that their PII had been stolen in a data breach affecting an unknown number of individuals. Upon information and belief, the data breach notifications are being sent by the franchisees and owners who use Citi's computer network for business purposes.

---

[2] https://www.jdsupra.com/legalnews/citi-trends-inc-announces-data-breach-7838536/
[3] *See* https://cititrends.com/about-us/ (last visited July7, 2023).
[4] https://www.jdsupra.com/legalnews/citi-trends-inc-announces-data-breach-7838536/
[5] http://edgar.secdatabase.com/2218/110465923024793/filing-main.htm

7. On or around June 21, 2023, Citi began notifying the Attorneys General of various States of the Data Breach. On or around June 22, 2023, Citi began notifying Plaintiff and other impacted Class Members of the Data Breach.

8. By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted PII that may have been accessed and/or acquired by an unauthorized actor included first and last name, Social Security number, date of birth, bank / financial account number, routing number, and other information.

9. Citi sent Notice Letters directly to its current and former employees, including Plaintiff. In that letter, Defendant admits that it was subject to a "recent security event that may have involved some of your personal information."[6]

10. As a result of Citi's Data Breach, Plaintiff and thousands of Class Members suffered ascertainable losses in the form of financial losses resulting from identity theft, out-of-pocket expenses, the loss of the benefit of their bargain, and the values of their time reasonably incurred to remedy or mitigate the effects of the attack.

11. Plaintiff's extremely sensitive PII entrusted to Citi was compromised, intentionally accessed, and removed by the cyber-criminals who perpetrated this attack, where it remains in the hands of those cyber-criminals. The exposed PII of Plaintiff and Class Members can be sold on the dark web. Hackers can access and then offer for sale the unencrypted, unredacted PII to criminals. Plaintiff and Class Members now face a lifetime risk of (i) identity theft, which is heightened here by the loss of Social Security numbers, and (ii) the sharing and detrimental use of

---

[6] *See* Plaintiff's Notice of Security Incident, dated June 22, 2023, attached as Exhibit A.

their sensitive information.

12. The PII was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII of Plaintiff and Class Members. Additionally, Defendant waited more than three months after the Data Breach occurred to report it to the State's Attorney Generals and affected individuals. Defendant has also purposefully maintained secret the specific vulnerabilities and root causes of the breach and has not informed Plaintiff and Class Members of that information.

13. As a result of this delayed response, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm, including the sharing and detrimental use of their sensitive information. The risk will remain for their respective lifetimes.

14. Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiff's Private Information directly resulted in the Data Breach.

15. Plaintiff brings this class action on behalf of herself and other similarly situated job applicants, current or former employees, or other individuals who received a Security Breach notice letter from Citi or its associated franchisees, subsidiaries, and restaurants.

16. Plaintiff seeks to address the grossly inadequate safeguarding of the PII that Defendant collected and maintained, and for failing to provide timely and adequate notice to Plaintiff that her PII had been accessed and acquired by an unknown third party. Defendant also failed to identify precisely what PII was accessed that belonged to Plaintiff.

17. Defendant preserved the PII in a reckless manner; particularly, the PII was kept on Defendant's computer network in a condition vulnerable to cyberattacks, including the ransomware attack that occurred. Because the mechanism of the cyberattack and potential for

improper disclosure of Plaintiff's PII was a known risk to Defendant, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

18. Defendant disregarded the privacy and property rights of Plaintiff by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data and computer systems were protected against unauthorized intrusions; failing to disclose that they did not have adequately robust computer systems and security practices to safeguard PII; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff prompt and accurate and complete notice of the Data Breach.

19. Had Defendant not failed to properly monitor the computer network and systems that housed the PII, it would have discovered the intrusion promptly, and potentially been able to stop the intrusion or, at the very least, mitigate the injuries to the Plaintiff.

20. Plaintiff's and other Class Members' identities are now at substantial and imminent risk because of Defendant's negligent conduct since the PII that Defendant collected and maintained (including Social Security numbers) is now in the hands of cybercriminals.

21. Using the PII accessed in the Data Breach, data thieves can commit a variety of crimes including, *inter alia*, opening new financial accounts or taking out loans in Plaintiff's name, using Plaintiff's information to receive government benefits, filing fraudulent tax returns, filing false medical claims using Plaintiff's information, obtaining driver's licenses in Plaintiff's name but with another person's photograph, and giving false information to police during an arrest.

22. Plaintiff is suffering from fraudulent activities or has been exposed to a heightened risk of fraud and identity theft due to Defendant's data breach. Plaintiff must now (and for years into the future) closely monitor her personal and financial accounts to guard against identity theft.

23. Plaintiff will likely incur out of pocket costs for, *e.g.*, unreimbursed fraudulent charges, purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

24. Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose PII was accessed during the Data Breach and, as such, brings this action against Citi for negligence, breach of implied contract, unjust enrichment, and declaratory relief, seeking redress for Defendant's unlawful and reckless conduct.

25. Plaintiff is seeking remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, declaratory relief, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate, long-term credit monitoring services funded by Defendant.

## PARTIES

26. Plaintiff Yeimy Sambrano is an individual citizen of the State of South Carolina, residing in the city of Greenville (Greenville County). Plaintiff is a former employee of Citi Trends.

27. Citi Trends, Inc., is a publicly held for profit corporation, organized under the laws of Delaware and headquartered in Savannah, Georgia. Citi's principal place of business is located at 104 Coleman Blvd., Savannah, GA, 31408.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.

29.     Defendant is a citizen of Georgia because it is a corporation with its principal place of business in Savannah, Georgia.

30.     The Southern District of Georgia has personal jurisdiction over Defendant because it conducts substantial business in Georgia and this District and collected and/or stored the PII of Plaintiff and Class Members in this District.

31.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant operates in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Defendant collecting and/or storing the PII of Plaintiff and Class Members.

**STATEMENT OF FACTS**

32.     Defendant collected the PII of Plaintiff and Class Members, including Defendant's current and former employees and prospective employees. As such, Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties.

33.     Plaintiff and Class Members relied on Citi's sophistication to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII.

34.     On or about June 22, 2023, Defendant sent Plaintiff and Class Members a notice of the Data Breach (the "Notice of Security Incident" or "Exhibit A"), informing them that:

> We are notifying you of a recent security event that may have involved some of your personal information.
>
> **What happened?** On or about January 14, 2023, a third-party

7

> entered and disrupted our information technology network. We immediately investigated and responded swiftly to this event, changing passwords and blocking the unauthorized access. Outside technical experts were also engaged to enhance the security of our systems.
>
> What information was involved? This unauthorized third-party hadthe ability to extract data from our IT environment, including certain files containing employee and prospective employee information.
>
> Based upon the results of the investigation, Citi Trends undertook an extensive process of reviewing the potentially-impacted files forsensitive information. While we do not have any evidence that anyone has actually obtained and misused your information, we are notifying you out of an abundance of caution that the potentially impacted files may have included your first and last name, [Extra1]and other information you may have shared with us in connection with your employment. We recommend that you remain vigilant andfollow the steps below.

35. The Notice of Security Incident that Defendant sent to Plaintiff stated that Plaintiff's first and last name, Social Security number, date of birth, bank / financial account number, routing number, and other information were impacted during the Data Breach. In response, Citi claims to have "immediately implemented our incident response plan, took steps to contain the activity, and launched an investigation."[7]

36. The unencrypted PII of Plaintiff and Class Members may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII of Plaintiff and Class Members.

37. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining for Plaintiff and Class Members, causing the exposure of PII for Plaintiff and Class Members.

---

[7] *Id.*

38.    Because Defendant had a duty to protect Plaintiff's and Class Members' PII, Defendant should have accessed readily available and accessible information about potential threats for the unauthorized exfiltration and misuse of such information.

39.    Plaintiff relied on the sophistication and security of Defendant and its network to keep her PII confidential and securely maintained, to use this information for business and/or employment purposes only, and to make only authorized disclosures of this information. Plaintiff had the understanding that this highly sensitive PII was confidential and would be properly safeguarded from misuse and theft.

40.    In the course of collecting PII from individuals, including Plaintiff, Citi promised to provide confidentiality and adequate security for Private Information and in compliance with statutory privacy requirements applicableto its industry.

41.    Citi is well aware of its legal privacy obligations, the risks of cyber threats, and that it had obligations created by the FTC Act, contract, industry standards, and common law to keep Plaintiff's PII confidential and to protect it from unauthorized access and disclosure.

42.    Plaintiff relied on the promises and duties of Citi and its subsidiaries to keep her sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

43.    In the course of their dealings, Plaintiff provided Citi (either directly or through its business associates and franchisees) with, *inter alia,* the following types of PII:

- First and last name;
- Home addresses;
- Date of birth;
- Financial information;

- Photo identification and/or driver's licenses;

- Email addresses;

- Phone numbers; and

- Social Security number.

44.    Citi had a duty to adopt reasonable measures to protect Plaintiff's PII from unauthorized disclosure to third parties.

**The Ransomware Attack and the Data Breach were
Foreseeable Risks of which Defendant was on Notice.**

45.    It is well known that PII, including Social Security numbers, is a valuable commodity and a frequent, intentional target of cyber criminals and hackers. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

46.    Individuals place a high value not only on their PII, but also on the privacy of said PII. Identity theft causes "significant negative financial impact on victims," severe negative repercussions to its victims, as well as severe distress and hours of lost time trying to fight against the impact of identity theft.[8]

47.    Data Breach victims suffer long-term and, sometimes, lifelong consequences when their Social Security numbers are taken and used by hackers. Even if they know their Social Security numbers are being misused, Plaintiff cannot obtain new numbers unless she has become a victim of social security number misuse.

48.    In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks because warnings were readily available and accessible via the internet.

---

[8] https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf

49.   In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[9]

50.   In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

51.   In October 2019, the Federal Bureau of Investigation published an article online titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[10]

52.   In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "*[r]ansomware gangs are now ferociously aggressivein their pursuit of big companies*. They breach networks, use specialized tools to maximize damage, *leak corporate information on dark web portals*, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[11]

53.   In September 2020, the United States Cybersecurity and Infrastructure Security Agency

---

[9] https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed July 7, 2023).

[10] FBI, High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations (Oct. 2, 2019) (emphasis added), *available at* https://www.ic3.gov/Media/Y2019/PSA191002 (last visited July 7, 2023).

[11] ZDNet, Ransomware mentioned in 1,000+ SEC filings over the past year (Apr. 30, 2020) (emphasis added), *available at* https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited July 7, 2023).

published online a "Ransomware Guide" advising that ***"[m]alicious actors have adjustedtheir ransomware tactics over time to include pressuring victims for payment by threatening torelease stolen data*** if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[12]

54.   Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

55.   According to an FBI publication, "Ransomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to operations and the loss of critical information and data."[13]

56.   Prior to the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack.

57.   Prior to the Data Breach, Defendant knew or should have known that it should have encrypted the Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

58.   Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Citi failed to take appropriate

---

[12] U.S. CISA, Ransomware  Guide – September 2020, *available at* https://www.cisa.gov/sites/default/files/2023-01/CISA_MS-ISAC_Ransomware%20Guide_S508C.pdf (last visited July 7, 2023).
[13] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/ransomware (last accessed April 28, 2023).

steps to protect the PII of Plaintiffs from being compromised.

**Defendant Had a Duty to Plaintiffs to Properly Secure their PII.**

59.    At all relevant times, Defendant had a legal and equitable duty to Plaintiff to properly secure her PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff, and to *promptly* notify Plaintiff when Defendant became aware that her PII was compromised.

60.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff. The special relationship arose because Plaintiff entrusted Defendant with their PII when they were employees or merely job applicants.

61.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff.

62.    Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

    a.  Maintaining a secure firewall configuration;

    b.  Maintaining appropriate design, systems, and controls to limit user access tocertain information as necessary;

    c.  Monitoring for suspicious or irregular traffic to servers;

    d.  Monitoring for suspicious credentials used to access servers;

    e.  Monitoring for suspicious or irregular activity by known users;

    f.  Monitoring for suspicious or unknown users;

    g.  Monitoring for suspicious or irregular server requests;

    h.  Monitoring for server requests for PII;

    i.  Monitoring for server requests from VPNs; and

       j.   Monitoring for server requests from Tor exit nodes.

63.   To prevent and detect ransomware attacks, including the ransomware attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs arethe target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on,as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed filesor ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[14]

---

[14]*See* How to Protect Your Networks from RANSOMWARE, at 3-4, *available at* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

64.     Defendant could have prevented this Data Breach by properly securing and encrypting the folders, files, and or data fields containing the PII of Plaintiff and Class Members.Alternatively, Defendant could have destroyed the data it no longer had a reasonable need to maintain or only stored data in an Internet-accessible environment when there was a reasonable need to do so.

65.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

66.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[15] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[16]

67.     The ramifications of Defendant's failure to keep consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security and driver's license numbers, fraudulent use of that information and damage to victims including Plaintiff may continue for years.

**The Value of Personal Identifiable Information ("PII").**

68.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200.[17]

---

 (last visited July 7, 2023).

[15] 17 C.F.R. § 248.201 (2013).
[16] *Id*.
[17] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-

69.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[18]

70.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

71.     Even a new Social Security number may not be effective, as "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[19]

72.     As one would expect, this data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security Numbers are worth more than

---

web-how-much-it-costs/ (last visited July 7, 2023).

[18] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited April 28, 2023).

[19] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited April 28, 2023).

10x on the black market."[20]

73.     Among other forms of fraud, identity thieves may use Social Security numbers to obtain driver's licenses, government benefits, medical services, and housing, give false information to police, and obtain tax returns or open fraudulent credit card accounts in Plaintiff's names.

74.     The Private Information compromised in this Data Breach is static and difficult, if not impossible, to change (such as Social Security numbers).

75.     Defendant's credit monitoring offer and advice to Plaintiff places the burden on Plaintiff, rather than the Defendant, to monitor and report suspicious activities to law enforcement. Simply put, Defendant expects Plaintiff to protect herself from *Defendant's* tortious acts resulting in the Data Breach. Rather than automatically enrolling Plaintiff in credit monitoring services upon discovery of the breach, Defendant merely sent instructions to Plaintiff about actions she can affirmatively take to protect herself.

76.     These services are wholly inadequate as they fail to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and financial fraud, and they entirely fail to provide any compensation for the unauthorized release and disclosure of Plaintiff's PII.

77.     The injuries to Plaintiff were directly and proximately caused by Citi' failure to implement or maintain adequate data security measures for the victims of its Data Breach.

**Defendant Failed to Comply with FTC Guidelines.**

78.     Federal and State governments have established security standards and issued recommendations to mitigate the risk of data breaches and the resulting harm to consumers and

---

[20] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed April 28, 2023).

financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[21]

79.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[22] The guidelines note businesses should protect the personal consumer andconsumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

80.     The FTC recommends that businesses:

  a.   Identify all connections to the computers where you store sensitive information.

  b.   Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

  c.   Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

  d.   Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer toprevent unauthorized access to that machine.

---

[21] Federal Trade Commission, *Start With Security,* available at:
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed April 28, 2023).
[22] Federal Trade Commission, *Protecting Personal Information: A Guide for Business,* available at: https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed April 28, 2023).

e. Pay particular attention to the security of their web applications—the softwareused to give information to visitors to their websites and to retrieve informationfrom them. Web applications may be particularly vulnerable to a variety of hackattacks.

f. Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network fromthe internet and may prevent an attacker from gaining access to a computer onthe network where sensitive information is stored. Set access controls— settings that determine which devices and traffic get through the firewall—toallow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

g. Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

h. Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user.If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

81. The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

82.     Because Plaintiff entrusted Defendant with her PII, Defendant had, and still has, a duty to the Plaintiff to keep her PII secure.

83.     Plaintiff reasonably expected that when she provided PII to Defendant and its subsidiaries, Defendant would safeguard her PII.

84.     Defendant was at all times fully aware of its obligation to protect the personal and financial data, including Plaintiff's. Defendant was also aware of the significant repercussions if it failed to do so.

85.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data—including Plaintiffs' first name, last name, addresses, and Social Security number, and other highly sensitive and confidential information—constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

**Concrete Injuries are Caused by Defendant's Inadequate Security.**

86.     Plaintiff reasonably expected that Defendant would provide adequate security protections for her PII, and Plaintiff provided Defendant with sensitive, personal information, including her name, address, and Social Security number.

87.     Defendant's poor data security deprived Plaintiff of the benefit of her bargain. Plaintiff and other individuals whose PII was entrusted with Defendant understood and expected that, as part of that business relationship, they would receive data security, when in fact Defendant did not provide the expected data security. Accordingly, Plaintiff received data security services that were of a lesser value than what she reasonably expected.  As such, Plaintiff suffered pecuniary injury.

88.     Cybercriminals intentionally attack and exfiltrate PII to exploit it. Thus, Plaintiff is now, and for the rest of her life will be, at a heightened and substantial risk of identity theft. Plaintiff have also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy

and costs of engaging adequate credit monitoring and identity theft protection services.

89.   The cybercriminals who obtained the Plaintiff's PII may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web." Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in Plaintiff's name, including but not limited to:

      a.  obtaining employment;

      b.  obtaining a loan;

      c.  applying for credit cards or spending money;

      d.  filing false tax returns;

      e.  stealing Social Security and other government benefits; and

      f.  applying for a driver's license, birth certificate, or other public document.

90.   In addition, if a Plaintiff's Social Security number is used to create false identification for someone who commits a crime, that individual may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

91.   As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff has been deprived of the value of her PII, for which there is a well-established national and international market.

92.   Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for fraudulent misuse of this information to be detected.

93.   Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.  Indeed, "[t]he level of risk is growing for anyone whose information is stolen in

a data breach."[23]  Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Plaintiff's PII will exploit the data at a later date or re-sell it to other possible exploiters.

94.    As a result of the Data Breach, Plaintiff has already suffered injuries, and now faces a substantial and imminent risk of future identity theft.

**Data Breaches Put Consumers at an Increased Risk of Fraud and Identify Theft**

95.    Data Breaches such as the one experienced Plaintiff is especially problematic because of the disruption they cause to the overall daily lives of victims affected by the attack.

96.    The FTC, like the United States Government Accountability Office, recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[24]

97.    Theft of Private Information is also gravely serious as Private Information is a valuable property right.[25]

98.    It must also be noted there may be a substantial time lag – measured in years -- between

---

[23] Susan Ladika, *Study: Data Breaches Pose A Greater Risk* (July 23, 2014), https://www.foxbusiness.com/features/study-data-breaches-pose-a-greater-risk (last accessed April 28, 2023).

[24] *See* https://www.identitytheft.gov/Steps (last accessed April 28, 2023).

[25] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

when harm occurs versus when it is discovered, and also between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which has conducted studies regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

99.   PII and financial information are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years. To be frank, because of Defendant's conduct, Plaintiff must now worry about identity theft for years on-end.

### Plaintiff's Experience.

100.  Plaintiff is, and at all times relevant to this complaint, a resident and citizen of the State of South Carolina.

101.  Plaintiff Sambrano is an individual who was formerly employed by Citi Trends, Inc. In exchange for employment, Plaintiff Sambrano was required to provide the store with her Private Information, including her Social Security number. Upon information and belief, Defendant uses Citi's computer systems for human resource management and payroll.

102.  Around or after June 22, 2023, Plaintiff received the "Notice of Security Incident" letter dated June 22, 2023, which indicated that Defendant had known about the Data Breach for about 6 months. The letter informed her that her PII was accessed during a recent "security event." The letter stated that the extracted information included her "name and social security number."[27]

---

[26] See "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last accessed July 7, 2023).
[27] See Notice of Incident Breach Letter, attached as Exhibit A.

103. Plaintiff is alarmed by the fact that her Social Security number was identified as among the breach data that was accessed.

104. In response to the Data Breach, now that she is *finally* aware that it occurred *months ago*, Plaintiff was required to spend time dealing with the consequences of the Data Breach, which included time spent verifying the legitimacy of the Notice of Security Incident, exploring credit monitoring and identity theft insurance options, and self-monitoring her accounts.

105. Plaintiff is very careful about sharing PII and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

106. Plaintiff suffered actual injury and damages as a result of the Data Breach. Plaintiff would not have provided Defendant with her PII had Defendant disclosed that it lacked data security practices adequate to safeguard PII.

107. Plaintiff suffered actual injury in the form of damages and diminution in the value of her PII—a form of intangible property that she entrusted to Defendant

108. Plaintiff has already suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy, especially her Social Security number.

109. Plaintiff reasonably believes that her Private Information may have already been sold by the cybercriminals. Had she been notified of Defendant's breach in a more timely manner, she could have attempted to mitigate her injuries.

110. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her stolen PII, especially her Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

111. Plaintiff has a continuing interest in ensuring that her PII, which upon information and

belief remains backed up and in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

112.  Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on her own behalf and as the Class representatives on behalf of the following Classes:

> **Nationwide Class:** All persons within the United States whose Personal and Private Information was stored on Citi Trend, Inc.'s computer network systems and who were informed via notice of the company's January 2023 Data Breach.

> **South Carolina Subclass:** All persons within South Carolina whose Personal and Private Information was stored on Citi, Inc.'s computer network systems and who were informed via notice of the company's January 2023 Data Breach.

113. The Nationwide Class and South Carolina Subclass shall collectively be referred to herein as the "Classes."

114.  Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

115.  Excluded from the Classes are governmental entities, Defendant, its officers, directors, franchise owners, and any entity Defendant retains a controlling interest in; and the affiliates, legal representatives, and employees of Defendant.

116.  This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

117.  **Numerosity** – Federal Rule of Civil Procedure 23(a)(1). This Class numbers at least in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. Class Members may be informed of the pendency of this class action through a variety of means, including, but not limited to, direct mail, email, published notice, and website posting.

118.  **Existence and Predominance of Common Questions of Law and Fact** – Federal Rules

of Civil Procedure 23(a)(2) and 23(b)(3). There are questions of fact and law common to the Classes that predominate over any question affecting only individual Members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a. Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's PII;

b. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Defendant owed a duty to Plaintiff to safeguard her PII;

f. Whether Defendant breached its duty to Plaintiff to safeguard her PII;

g. Whether computer hackers obtained Plaintiff's PII in the Data Breach;

h. Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

i. Whether Plaintiff suffered legally cognizable damagesas a result of Defendant's misconduct;

j. Whether Defendant's conduct was negligent;

k. Whether Defendant failed to provide notice of the Data Breach in a timely manner; and

l. Whether Plaintiff is entitled to damages, civil penalties,punitive damages, and/or injunctive relief.

119.  **Typicality** – Federal Rule of Civil Procedure 23(a)(3).  Plaintiff's claims are typical of those of the Class because Plaintiff's Private Information, like that of every other Class member, was compromised in the Data Breach.

120.  **Superiority** – Federal Rule of Civil Procedure 23(b)(3). A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class Members to protect their interests.  In addition, it would be impracticable and undesirable for each member of the Class who suffered an economic loss to bring a separate action.  The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members.

121.  **Adequacy** – Federal Rule of Civil Procedure 23(a)(4).  Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Classes that she seeks to represent. The interests of the Members of the Classes will be fairly and adequately protected by Plaintiff and her undersigned counsel.

122.  **Insufficiency of Separate Actions** – Federal Rule of Civil Procedure 23(b)(1). Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated Class members, substantially impeding their ability to protect their interests, while  establishing incompatible standards of

27

conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

123. **Declaratory and Injunctive Relief** – Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Members of the Classes as a whole.

124. Additionally, the Classes may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.  The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

b.  The prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.  Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final and injunctive relief with respect to the members of the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
**Negligence**
**(On Behalf of the National Class and, alternatively, the Subclass)**

125. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth

28

herein.

126.  As part of the regular course of its business operations Defendant gathered and stored the PII of Plaintiff and Class Members. Plaintiff and the Class were entirely dependent on Defendant to use reasonable measures to safeguard their PII and were vulnerable to the foreseeable harm of a security breach should Defendant fail to safeguard their PII.

127.  By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

128.  Defendant owed a duty of care to Plaintiff and the Class to provide data security consistent with industry standards and other requirements discussed herein, and to ensurethat its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

129.  Defendant's duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect PII by companies such as Citi. Various FTC publications and data security breach orders further form the basis of Defendant's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

130.  Plaintiff and the Class are within the class of persons that the FTC Act was intended to

protect.

131. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

132. Defendant gathered and stored the PII of Plaintiff and the Class as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

133. Defendant violated the FTC Act by failing to use reasonable measures to protect the PII of Plaintiff and Class Members and by not complying with applicable industry standards.

134. Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard their PII, and by failing to provide prompt notice without reasonable delay.

135. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those who sought or were employed by it or its franchisees, which is recognized by laws and regulations including but not limited to FTCA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and the Class or minimize the Data Breach.

136. Defendant's multiple failures to comply with applicable laws and regulations, and the violation of Section of 5 of the FTC Act constitutes negligence *per se*.

137. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

30

138. Defendant had full knowledge of the sensitivity of the PII, the types of harm that Plaintiff could and would suffer if the PII was wrongfully disclosed, and the importance of adequate security.

139. Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class had no ability to protect their PII that was in Defendant's possession.

140. Defendant was in a special relationship with Plaintiff and the Class with respect to the hacked PII because the aim of Defendant's data security measures was to benefit Plaintiff by ensuring that their PII would remain protected and secure. Only Defendant was able to ensure that its systems were sufficiently secure to protect Plaintiff's and other Class Members' PII. The harm to Plaintiff and the Class from its exposure was highly foreseeable to Defendant.

141. Defendant owed Plaintiff and other Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their PII, including acting to reasonably safeguard such data and providing notification to Plaintiff and the Class of any breach in a timely manner so that appropriate action could be taken to minimize losses.

142. Defendant had duties to protect and safeguard the PII of Plaintiff and other Class Members from being vulnerable to compromise by taking common-sense precautions when dealing with highly sensitive PII. Additional duties that Defendant owed Plaintiff and the Class include:

    a. Exercising reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that individuals PII was adequately secured from impermissible release, disclosure, and publication;

    b. To protect Plaintiff's and the Class's PII in its possession by using reasonable and

31

adequate security procedures and systems; and

    c.  To promptly notify Plaintiff and the Class of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their PII.

143. Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the PII that had been entrusted to them.

144. Defendant breached its duties of care by failing to adequately protect Plaintiff and the Class's PII. Defendant breached its duties by:

    a.  Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the PII in its possession;

    b.  Failing to protect the PII in its possession using reasonable andadequate security procedures and systems;

    c.  Failing to adequately and properly audit, test, and train its employees regardinghow to properly and securely transmit and store PII;

    d.  Failing to adequately train its employees to not store unencrypted PII in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

    e.  Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's PII;

    f.  Failing to mitigate the harm caused to Plaintiff and the Class;

    g.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

    h.  Failing to promptly notify Plaintiff and other Class Members of the Data Breach that affected their PII.

145. Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

146. Citi, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Class during the time the PII was within Defendant's possession or control.

147. Defendant's failure to provide timely and clear notification of the Data Breach to Plaintiff and the Class prevented Plaintiff and the Class from taking meaningful, proactive steps to securing their PII and mitigating damages.

148. Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

149. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in their continued possession; and (viii) future costs in terms of time, effort, and money

33

that will be expended to monitor bank accounts and credit reports, prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and members of the Class.

150.   As a direct and proximate result of Citi's negligence, Plaintiff, and members of the Class have suffered (and will continue to suffer) other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non- economic losses.

151.   Additionally, as a direct and proximate result of Citi's negligence and negligence *per se*, Plaintiff and members of the Class have suffered and will suffer the continued risks of exposure of their PII, which remains in Citi' possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

152.   Plaintiff and members of the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

## <u>COUNT II</u>
**Breach of Implied Contract**
**(On Behalf of the National Class and, alternatively, the Subclass)**

153.   Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

154.   In its 10-K (Annual Report) filed with the Securities and Exchange Commission onApril 17, 2019, Defendant represented that (1) "[o]ver the normal course of business operations, we obtain certain private or confidential information of our employees," (2) "we have implemented security procedures and technology that are intended to safeguard this information from cybersecurity attacks and data breaches," and (3) "[t]hese safeguards include, but are not limited to, routine penetration and vulnerability testing, network segmentation, strong encryption protocols, virus and malware protection, email security scanning,

simulation training, vendor assessments, and on-going monitoring and patching activities."

155. Defendant made similar assertions in its subsequent Annual Reports filed with the Securities and Exchange Commission in 2020, and 2021, and 2022.

156. Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving employment or other services provided by Defendant.

157. Plaintiff and Class Members provided PII to Defendant (or its third-party agents) in exchange for employment. In exchange, Defendant promised to protect their PII from unauthorized disclosure.

158. At all relevant times Defendant promulgated, adopted, and implemented written a Privacy Policy whereby it expressly promised Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

159.  On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII would remain protected.

160.  Implicit in the agreement between Plaintiff, Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

161.  Defendant required Plaintiff and Class Members to provide their PII as part of regular business practices.

162.  When Plaintiff and Class Members provided their PII to Defendant as a condition of the employment relationship, implied contracts were created with Defendant. As such, Defendant

35

agreed to reasonably protect such information.

163. Plaintiff and Class Members entered into the implied contracts with the reasonable expectation and belief that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards. Plaintiff and Class Members believed that Citi would use part of the monies paid to Defendant under the implied contracts or the monies obtained from the benefits derived from the PII they provided to fund adequate and reasonable data security practices.

164. Plaintiff and the Class would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure. Plaintiffs and Class Members would not have entrusted their PII to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures. The safeguarding of Plaintiff's and Class Member's PII was critical to realize the intent of the parties.

165. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

166. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII.

167. As a direct and proximate result of Defendant's breaches of the implied contracts, Plaintiff and Class Members sustained damages.

168. Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

169. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual

36

audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Plaintiff and Class Members for a period longer than the inadequate one-year currently offered.

### COUNT III
**Unjust Enrichment**
**(On Behalf of the National Class and, alternatively, the Subclass)**

170. Plaintiff re-allege and incorporates by reference the paragraphs above as if fully set forth herein.

171. Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of employment or purchasing products from Defendant, and in connection thereto, by providing their PII to Defendant with the understanding that Defendant would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, they were required to provide Defendant with their PII. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such PII held by Defendant.

172. Defendant knew Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII of Plaintiff and Class Members for business purposes.

173. Acceptance of the benefit under these facts and circumstances make it inequitable for Defendant to retain that benefit without payment of the value thereof. Defendant enriched itself by saving the costs it reasonably should have expended ondata security measures to secure Plaintiff's and Class member's PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members thus suffered as a direct and proximate result of Defendant's decision to prioritize profits

overthe requisite data security.

174. Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

175. Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

176. If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

177. Plaintiff and Class Members have no adequate remedy at law.

178. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

179. For the benefit of Plaintiff and Class Members, Defendant should be compelled to disgorge proceeds that they unjustly received from them into a common fund or constructive trust.

## COUNT IV
### Invasion of Privacy
### (On Behalf of the National Class and, alternatively, the Subclass)

180. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

181. Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

182. Defendant owed a duty to its current, former, and prospective employees, including Plaintiff and Class Members, to keep their PII confidential.

183. Defendant failed to protect and released to unknown and unauthorized third parties the PII of Plaintiff and Class Members.

38

184. The PII that was publicized during the Data Breach was highly sensitive, private, and confidential, as it included various PII.

185. Defendant acted with reckless disregard for the privacy of Plaintiff and Class Members rising to the level of (1) an intentional intrusion by Defendant, (2) into a matter that Plaintiff and Class Members have a right to keep private (i.e., their PII), and (3) which is highly offensive to a reasonable person.

186. Defendant acted knowingly when it permitted the Data Breach to occur; it had actual knowledge that its information security practices were inadequate and insufficient. Defendant knew that PII was stored for years after Defendant no longer had a legitimate use for such data. Defendant also knew that the PII it stored was not securely encrypted, and that its systems were vulnerable to foreseeable threats as a result of inadequate security measures and training.

187. Defendant was aware of the potential of a data breach and failed to adequately safeguard its systems and implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' data and PII.

188. Defendant acted with such reckless disregard as to the safety of Plaintiff's and Class Members' PII to rise to the level of intentionally allowing the intrusion upon Plaintiff's and Class Members' seclusion.

189. The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and Class Members' is highly offensive to a reasonable person.

190. Plaintiff and Class Members' have been damaged by the invasion of their privacy in an amount to be determined at trial.

**COUNT V**
**Declaratory Judgment**
**(On Behalf of the National Class and, alternatively, the Subclass)**

39

191. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

192. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

193. An actual controversy has arisen in the wake of Defendant's data breach regardingits present and prospective common law and other duties to reasonably safeguard its customers' PII and whether Defendant is currently maintaining data security measuresadequate to protect Plaintiffs from further data breaches that compromise their PII.

194. Plaintiff(s) allege that Defendant's data security measures remain inadequate. Plaintiff(s) will continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

195. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a. Citi continues to owe a legal duty to secure current and former employees'PII and to timely notify employees and former employees of a databreach under the common law, Section 5 of the FTC Act, and various state statutes;

   b. Citi continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiff's and Class Members' PII.

196. The Court also should issue corresponding prospective injunctive relief requiring that Citi employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

197.  If an injunction is not issued, Plaintiffs will suffer irreparableinjury, and lack an adequate legal remedy, in the event of another data breach at Citi. The risk of another such breach is real, immediate, and substantial. If another breach at Citi occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

198.  The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Citi if an injunction is issued. Among other things, if another massive data breach occurs at Citi, Plaintiffs will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost toCiti of complying with an injunction by employing reasonable prospective data securitymeasures is relatively minimal, and Citi has a pre-existing legal obligation to employ such measures.

199.  Issuance of the requested injunction will not do a disservice to the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Citi, thus eliminating the additional injuries that would result to Plaintiffs and the millions of individuals whose PII would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes alleged herein, respectfully request that the Court enter judgment in her favor and against Defendant as follows:

A.  For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and Plaintiff's attorneys as Class Counsel;

B.  For an order declaring the Defendant's conduct violates the causes of action

referenced herein;

C. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D. Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class

E. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief;

H. For injunctive relief as pleaded or as the Court may deem proper; and

I. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees;

J. Such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

Dated: July 7, 2023

Respectfully submitted,

*/s/ Brent Kaufman*
Brent Kaufman (Ga. Bar. No. 441430)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: brent.kaufman@poulinwilley.com
        blake@akimlawfirm.com

42

pauld@akimlawfirm.com